AO 91 (Rev. 08/09)  Criminal Complaint

```
F I L E D
AUG - 9 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA
```

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  3:16-mj 197 (UNDER SEAL) |
| | ) | |
| Merrill Robertson, Jr. | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 2009-August 2016___ in the county of ___Chesterfield___ in the ___Eastern___ District of ___Virginia, and elsewhere___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1349 | Conspiracy to Commit Wire Fraud |
| 18 U.S.C. Section 1341 | Mail Fraud |
| 18 U.S.C. Section 1957 | Unlawful Monetary Transactions |
| 18 U.S.C. Section 1344 | Bank Fraud |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:

| Katherine Lee Martin |
|---|

_____
*Complainant's signature*

E.T. O'Donnell
_____
*Printed name and title*
Postal Inspector, U.S. Postal Inspection Service

Sworn to before me and signed in my presence.

Date:  ___08/09/2016___

City and state:  ___Richmond, Virginia___

/s/ _____
Roderick C. Young
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, E. T. O'Donnell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of a criminal complaint and an arrest warrant for Merrill Robertson, Jr. owner and operator of Cavalier Union Investments, LLC ("Cavalier") and Black Bull Wealth Management, LLC ("Black Bull").

2.     I am a United States Postal Inspector, currently assigned to the Richmond, Virginia Field Office of the United States Postal Inspection Service.  I have been a U.S. Postal Inspector since February 2003.  During my career as a U.S. Postal Inspector I have conducted numerous investigations involving violations of federal law including, but not limited to, Wire Fraud, Mail Fraud and Bank Fraud.  I have executed numerous search warrants and have made numerous arrests throughout my career as a law enforcement officer.

3.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1349 (Conspiracy to Commit Wire Fraud), 1341 (Mail Fraud), 1957 (Unlawful Monetary Transactions), and 1344 (Bank Fraud) have been committed by Merrill Robertson, Jr. and others known and unknown.

**PROBABLE CAUSE**

5.      This investigation is being worked jointly by Internal Revenue Service-Criminal

Investigation (IRS-CI), Federal Bureau of Investigation (FBI), and the United States Postal

Inspection Service (USPIS).  Based on my investigation to date, there is probable cause to

believe that Merrill Robertson, Jr. and others have participated in a Conspiracy to Commit Wire

Fraud, that is, Robertson knowingly and intentionally combined, conspired, confederated and

agreed with others known and unknown to commit an offense against the United States, to wit:

wire fraud, in violation of Title 18, United States Code, Section 1349; Mail Fraud, that is,

Robertson devised a scheme or artifice to defraud, and to obtain money and property by means

of materially false and fraudulent pretenses, representations, and promises, did knowingly place

and caused to be placed any post office and authorized depository for mail matter, any matter

and thing whatever to be sent and delivered by the Postal Service, deposit and caused to be

deposited any matter or thing whatever to be sent and delivered by any private and commercial

interstate carrier, and, caused to be delivered by mail and such carrier any matter and thing

whatever according to the direction thereon, in violation of Title 18, United States Code, Section

1341; Making an Unlawful Monetary Transaction, that is, Robertson knowingly engaged and

attempted to engage in a monetary transaction by, through, and to a financial institution,

affecting interstate and foreign commerce, in criminally derived property of a value greater than

$10,000, such property derived from specified unlawful activity, to wit: mail fraud, in violation

of Title 18, United States Code, Section 1957; and Bank Fraud, that is, Robertson knowingly

executed and attempted to execute a scheme and artifice to defraud Navy Federal Credit Union

("NFCU"), a financial institution with accounts insured by the National Credit Union

Administration, and to obtain moneys, funds, credits, assets, securities, and other property owned

2

by and under the custody and control of NFCU, by means of materially false pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

6.    This investigation was initiated based on information received from the United States Securities and Exchange Commission ("SEC") indicating that Merrill Robertson, Jr. and others were engaged in a scheme to defraud and to obtain money from investors through material misrepresentations and omissions.

7.    According to information I obtained through the course of this investigation, Robertson started Cavalier in approximately 2009 with a business partner named Sherman Carl Vaughn, Jr. (a/k/a Carl Vaughn).  Between 2009 and 2015, Cavalier obtained at least $8 million from more than 40 investors.

8.    During this time, Robertson made material misrepresentations and omissions about the use of investor funds, the assets securing investor funds, and the investment vehicle into which investor funds would be deposited.

9.    Robertson, on behalf of Cavalier, signed promissory notes with many investors that guaranteed a specific rate and return, and pledged that investment funds were secured by tangible assets.

10.    ROBERTSON provided many investors with annual statements that misrepresented the value of their investment at the time, and the account number where investment funds were supposedly located.

11.    During a deposition with the SEC in October 2015, Robertson acknowledged that Cavalier has failed to pay back the approximately $8 million in principal invested with the company and that Cavalier has ceased making any interest payments to investors.  Robertson testified during this deposition that he received investor funds through wire transactions.

3

Robertson stated that Cavalier currently has no income or assets.  Robertson admitted that he often commingled business, personal and investor funds.  Robertson stated that he used investor funds to pay for personal expenses such as his mortgage and car payments.  Robertson acknowledge sending out Cavalier account statements to investors that indicated that investments were made in a "bond fund" when in actuality nothing had been invested in a bond fund.

12.    Cavalier maintained a website at www.cavui.com that also contained material misrepresentations regarding the company's business and assets.  The Cavalier website advertised that it invested in a "portfolio of companies and industries" divided into three "segments": Cavalier Union Foods, Cavalier Union Real Estate, and Cavalier Union Energy.  The website stated that "[a]ll divisions of CUI's portfolio are secured by tangible assets that yield higher returns than traditional investments while providing safety and security for our investors."  Present on the Cavalier website under the heading "Cavalier Union Foods" was a logo for Burger King.  Robertson admitted during the SEC deposition that Cavalier never owned a Burger King restaurant.  Robertson also admitted that Cavalier never owned any real estate associated with its real estate business and that its energy business did not have any tangible assets.

13.    During the deposition with the SEC, Robertson stated that he used the email address merillrob44@yahoo.com for business purposes and that he used that email account to communicate with Cavalier investors.  I received documentation showing that Robertson used this email account to solicit investments from and communicate with investors in furtherance of the scheme to defraud.

a.    For example, Robertson sent a fraudulent document and other documents containing misrepresentations to a Cavalier investor when soliciting a $2 million investment.

4

Specifically, the Cavalier investor or his representative received a letter dated February 15, 2013, purportedly from a representative at Bank of America which indicated that Cavalier maintained $11 million in a Bank of America account. On February 28, 2013, Robertson sent information by email to the investor's representative for purposes of soliciting a $2 million investment in a water company allegedly owned by Robertson, Vaughn, and/or Cavalier. The information that Robertson provided with respect to the water company suggested that the company was public and that Robertson had previously managed over $250 million in assets while employed at Merrill Lynch. The information packet also contained invoices purporting to show sales—some exceeding $100,000—allegedly conducted by the water company. The information packet also contained information suggesting that an individual with experience in water filtration systems was part of the water company's "team."

      b.     During his SEC deposition, Robertson admitted that Cavalier never maintained an account at Bank of America and never maintained a balance of $11 million in any bank account. Robertson also acknowledged that the water company for which he was soliciting the $2 million investment was not public, that he had not personally managed $250 million in assets while employed at Merrill Lynch, and that the invoices supplied to the investor showing sales by the water company did not reflect sales that had actually occurred. On or about April 14, 2016, I interviewed the individual who was listed as the water filtration specialist and part of the water company's "team" on the informational packet. He stated that he never provided Robertson or Vaughn with authority to use his name on the informational packet.

      c.     According to information obtained in the investigation, the investor did provide Cavalier and Robertson with a $2 million investment in March 2013, sent by wire transfer from Fifth Third Bank in Ohio to a Wells Fargo Bank branch in the Eastern District of

Virginia after receiving the information packet related to the water company. To date, that investor has received no return on his investment.

      d.    A review of bank records obtained in the course of this investigation reveals that the investor's $2 million has been used for purposes other than investment in a water company, including hundreds of thousands of dollars in transfers to the personal accounts of Robertson and Vaughn, hundreds of thousands of dollars in donations and tithes to various churches and other organizations, and for payments to other Cavalier investors.

      14.    A Cavalier investor and cooperating witness (hereinafter CW1) was interviewed by agents on March 3, 2016. CW1 invested $69,525.92 with Robertson on December 17, 2012. CW1 liquidated a company 401(k) account and understood from conversations and e-mail communications with Robertson that CW1's investment with Cavalier was being rolled over to an IRA account at Cavalier, and that CW1 would earn a 20% annual return. CW1 made two back-to-back consensually recorded telephone calls to Robertson on Robertson's cellphone on March 3, 2016, in which CW1 asked Robertson for CW1's account balance as of December 31, 2015, and also for paperwork to confirm that CW1's investment was a direct 401(k) to IRA transfer. Robertson advised CW1 that he was at home and would need to go upstairs, get his computer loaded up, and would re-send an e-mail to CW1 with the requested account balance as of December 31, 2015.

      15.    Following the two consensually recorded telephone calls to Robertson on March 3, 2016, CW1 received an e-mail from Robertson at merrillrob44@yahoo.com later that evening in which he advised CW1 that the account balance as of December 31, 2016, was $120,139.20. I have calculated that $69,525 compounded annually at 20% for three years is exactly $120,139.20. CW1 had previously asked Robertson to provide the account balance as of

December 31, 2015, which was approximately three years from CW1's original investment, so it is unclear why Robertson referenced the date December 31, 2016, in his e-mail to CW1 on March 3, 2016, other than possibly being a typographical error.  To date, CW1 has never received any interest or principal repayments from Cavalier.

16.     M. S. and T. S., who reside in Chester, Virginia, which is within the Eastern District of Virginia, also invested with Cavalier Union Investments, LLC.  Robertson told M.S. and T.S. that assets from their tax deferred retirement accounts would be rolled over to a tax deferred retirement account managed by Cavalier.  He never mentioned any commissions or fees associated with the investment, or that the money would be used for personal expenses, charitable giving, or to repay other investors.

17.     On or about October 9, 2014, M. S. decided to liquidate funds from a retirement account for the purposes of investing with Cavalier Union Investments, LLC and Merrill Robertson, Jr.  These funds were redeemed from a Mass Mutual retirement account and Mass Mutual mailed check No. 500037063 in the amount of $175,980.05 to: Cavalier Union Investments, FBO: M.S to the couple's residence in Chester, Virginia.

18.     On or about October 9, 2014, T. S. decided to liquidate funds from a retirement account for the purposes of investing with Cavalier Union Investments, LLC and Merrill Robertson, Jr.  These funds were redeemed from a Mass Mutual retirement account and Mass Mutual mailed check No. 500037064 in the amount of $281,832.98 to: Cavalier Union Investments, FBO: T. S. to the couple's residence in Chester, Virginia.

19.     During an interview the couple reported that they gave these checks to Merrill Robertson, Jr.  These checks were converted into certified bank checks at Bank of America in the same amounts and made payable to Cavalier Union Investments on or about October 14, 2014.

7

The remitter (purchased by) section of these certified checks lists Merrill Roberts, Jr. which is believed to be a typographical error.

20.     On or about October 14, 2014, these two Bank of America certified checks totaling $457,813.03 were used to open a Cavalier Union Investments Wells Fargo account ending in 9094.

21.     On or about October 15, 2014, $51,000.00 was wired from the Cavalier Union Investments account ending in 9094 into the Harborstone Credit Union account of T. W., another Cavalier investor.

22.     On or about October 15, 2014, $30,000.00 was wired from the Cavalier Union Investments account ending in 9094 into a Wells Fargo bank account ending in 1907, which is the personal account of Merrill Robertson, Jr. and his wife.

23.     On or about October 16, 2014, $30,000.00 was wired from the Cavalier Union Investments account ending in 9094 into a Citibank bank account ending in 0256, which is the personal account of Sherman Carl Vaughn, Jr.

24.     On or about August 3, 2016, your affiant interviewed D. W. and M. W. a couple that previously invested over $300,000 with Cavalier Union Investments, LLC and Merrill Robertson, Jr. Again, Robertson told D.W. and M.W. that assets from their tax deferred retirement accounts would be rolled over to a tax deferred retirement account managed by Cavalier. Since October 2015, the couple repeatedly asked Robertson for the return of their money.

25.     In or about June 2016, Merrill Robertson, Jr. approached D. W. and M. W. and suggested that he could help them obtain loans, and other forms of credit. Specifically, Robertson suggested that D.W. and M.W. obtain an "auto conversion loan" with the Navy

8

Federal Credit Union (NFCU). Merrill Robertson, Jr. assured D. W. and M. W. that this loan would be taken care of and they would not need to make payments on this loan.

26.     NFCU representatives have advised that on or about June 16, 2016 an online loan application was submitted in the name and with the personal identifiers of D. W. for $41,000. The purported purpose of the loan was to purchase a new automobile from Merrill Robertson. The application indicated that D.W. was employed by Cavalier Union Investments for 16 years and that he earned a salary of $9,526 per month. D. W. advised during the interview that he has never worked for Cavalier Union Investments and never received this monthly salary. D. W. claims that this auto loan was submitted online by Merrill Robertson, Jr. and that D. W. just showed up to the NFCU branch to sign the loan documents and receive the loan proceeds.

27.     Later on or about June 16, 2014, D. W. and Merrill Robertson, Jr. entered the NFCU branch at 5445 Glenside Drive, Richmond, VA 23228. D. W. signed the promissory note and a $41,000 check made payable to D. W. and Merrill Robertson was issued to D. W. to purchase a 2015 GMC light duty Sierra pickup truck. D. W. never physically saw a 2015 GMC light duty Sierra pickup truck in the course of completing this loan transaction, and Virginia Department of Motor Vehicles records indicate that Merrill Robertson, Jr. never owned the vehicle. The $41,000 check was immediately redeemed at the branch and D. W. admitted to receiving $10,000 in cash, $10,000 was issued in cash to Merrill Robertson, Jr. and $21,000 was issued in the form of a certified check No. 0438989956 made payable to Merrill Robertson, Jr. D. W. was the listed remitter on check No. 0438989956.

28.     Additionally, a credit card was issued to D. W. by NFCU with a $25,000 credit limit. NFCU representatives advised that $19,150 of this credit limit was used in an online PayPal transaction on June 20, 2016. When D. W. was asked about this PayPal transaction, he

9

claimed he had no knowledge of this transaction at the time or how the transaction occurred. D.W. did admit to using this credit card to attend the funeral of one of his friends in North Carolina.

29.     NFCU also extended a $12,500 line of credit to D. W.  On or about June 23, 2016, D. W. and Merrill Robertson, Jr. again entered the NFCU branch at 5445 Glenside Drive, Richmond, VA 23228, and under the instruction and direction of Merrill Robertson, Jr., D. W. withdrew $8,500 in cash from the line of credit account and gave this cash immediately to Robertson because Robertson told D.W. the money was needed to pay other individuals involved in securing these loans, and other forms of credit.

30.     NFCU representatives indicate that Merrill Robertson, Jr. and/or Cavalier are connected to additional automobile loans, and other lines of credit.

## CONCLUSION

31.     Based on the forgoing, I submit that this affidavit supports probable cause for a criminal complaint and arrest warrant for Merrill Robertson, Jr., in violation of Title 18, United States Code, Sections 1349, 1341, 1957, and 1343.

Respectfully submitted,

E.T. O'Donnell
U. S. Postal Inspector

Subscribed and sworn to before me on this _9th_ day of August, 2016.

/s/

Roderick C. Young
United States Magistrate Judge

10